Eugene WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–94–00397–CR.

Court of Appeals of Texas,
El Paso.

July 25, 1996.

David P. Zavoda, Monahans, for appellant.

John Stickels, District Attorney, Monahans, for state.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

LARSEN, Justice.

Eugene Williams, appellant, appeals his conviction for the lesser-included offense of voluntary manslaughter. The jury found appellant guilty and further found that he had used a deadly weapon in the commission of the offense. The jury assessed punishment at imprisonment in the Institutional Division of the Texas Department of Criminal Justice for a term of thirteen years. We affirm.

### FACTS

Janice Johnson, the victim, and appellant were married in April of 1992. Johnson had an eight-year-old daughter, Brittany, from a prior relationship, and an infant daughter, Tia, born to appellant and Johnson on August 12, 1993. Johnson and appellant separated on October 1, 1993 and Johnson filed a petition for divorce on May 2, 1994. By virtue of temporary orders entered by the trial court on June 1, 1994, Johnson had custody of both Brittany and Tia.

Shortly after 8 p.m. on June 26, 1994, appellant arrived at Johnson's home in his red truck. According to Brittany who was listening from the living room of the home, Johnson and appellant got into an argument because she would not let him come inside and see Tia. Neighbors who were outside their homes nearby could see appellant and Johnson talking outside, but they did not hear them arguing. One of the neighbors heard Johnson scream "no, no, no" just before they heard two gunshots. Johnson ran screaming to a nearby neighbor's home, but appellant chased her down and shot at her at least twice more. Appellant, still carrying the gun, walked back to his truck and drove

away slowly. When the neighbor opened the door, Johnson fell inside onto his floor. She died before emergency personnel could arrive. The medical examiner determined that Johnson had been shot twice, once in the throat and once in the back. The bullet which entered her throat traveled into her chest and severed an artery near her heart, causing her to bleed to death.

Nora Littlejohn, a dispatcher for the Ward County Sheriff's Office testified that sometime between 8:30 and 9 p.m., she heard the radio traffic between the Monahans Police Department and their police officers concerning a shooting. Littlejohn heard a description of the suspect in the shooting and further heard him identified as Eugene Williams. A few minutes later, someone activated a buzzer on the outside entrance to the Sheriff's Office. Littlejohn asked the individual if she could help him, and he stated that he needed to turn himself in because he had just shot his wife. The man identified himself as Eugene Williams and a trooper who happened to be in the Sheriff's Office took appellant into custody. At 11 p.m. that same evening, appellant called his supervisor at home and told him that he had to resign from his job because he had killed his wife that afternoon.

The state introduced evidence showing that appellant had physically assaulted and threatened to kill Johnson at various times during their marriage. Appellant testified and admitted one of the assaults, but he either denied the other instances or said he did not remember them. With respect to the shooting, appellant told the jury that Johnson asked him for $50 and when he refused to give it to her, they got into an argument. Appellant claimed that when he turned and walked away, Johnson followed, cursing at him, and hitting and kicking him. Johnson said that if appellant did not give her the money, she would move to South Carolina and he would never see his daughter again. Appellant said that he knew that Johnson had an affair with a man who now lived in South Carolina and he understood her statement to mean that she was returning to that man. Appellant described himself as scared, frightened, and angry. Appellant then

walked to his truck, but he did not remember getting his gun out of the truck or shooting Johnson.

The trial court instructed the jury on murder, voluntary manslaughter, and aggravated assault. The jury acquitted appellant of murder, but convicted him of voluntary manslaughter.

## EXTRANEOUS OFFENSES

In Points of Error One through Five and Eleven through Fifteen, appellant contends the trial court erred in admitting evidence showing his commission of extraneous offenses, namely, prior threats and assaults upon the deceased. He argues that the evidence is inadmissible under Rules 402, 403, and 404(b) of the Texas Rules of Criminal Evidence. The state counters that the evidence is admissible pursuant to Rule 404(b) to show appellant's intent, motive, pattern, scheme, and plan. The state also argues that the evidence is admissible pursuant to former § 19.06 of the Texas Penal Code. Appellant also challenges in Points of Error One through Five, the admission of State's Exhibits 24 through 28 on the ground of hearsay. The hearsay contention will be addressed separately following the extraneous offense analysis.

### Preservation of Error

In Point of Error Eleven, appellant challenges the admission of State's Exhibit 2 which is Johnson's application for housing at Monahans Housing Authority. On that application, she claimed a preference on the ground she had been displaced by domestic violence. With respect to Exhibit 2 and Shirley Hill's testimony relating to the information contained in that exhibit, appellant did not object at trial on the basis of Rules 402, 403, or 404(b). Consequently, the asserted error is waived. TEX.R.APP.P. 52(a); see Montgomery v. State, 810 S.W.2d 372, 387–88 (Tex.Crim.App.1991)(opin. on reh'g). Point of Error Eleven is overruled.

### The Evidence

State's Exhibit 24 is a certified copy of the Original Petition for Divorce and Application for Protective Order filed by Johnson on May 2, 1994 in the case styled In the Matter of the Marriage of Janice Johnson and Eugene Williams and In the Interest of Tia Monet Williams, a Child. The majority of this document does not constitute evidence of an extraneous offense. However, Johnson alleged in the petition that appellant had committed family violence as stated in her affidavit attached to the petition, and that the acts were intended to result in physical harm, bodily injury, or assault, or were threats which placed Johnson in fear of imminent physical harm, bodily injury, or assault.

State's Exhibit 25 is a certified copy of Petitioner's Supporting Affidavit for Extraordinary Relief. Johnson stated in her affidavit that appellant had pushed, choked, kicked, and struck her since they began living together in 1991, and that the abuse continued after they married in 1992. She stated that she had sought medical attention on two occasions for injuries inflicted upon her by appellant. She received stitches for a laceration on one occasion and treatment for a badly sprained wrist on another. She also stated that appellant had threatened her many times.

State's Exhibit 26 is a certified copy of Johnson's affidavit of indigency filed with State's Exhibits 24 and 25. This affidavit was filed pursuant to TEX.R.CIV.P. 145, and reflects Johnson's monthly income and expenses. Nothing in this affidavit can be reasonably construed as reflecting the commission of an extraneous offense by appellant. See Harris v. State, 738 S.W.2d 207, 224 (Tex.Crim.App.1986), cert. denied, 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987)(if the evidence fails to show that an offense was committed or that the defendant was connected to the offense, then it is not evidence of an extraneous offense); Laca v. State, 893 S.W.2d 171, 186 (Tex.App.—El Paso 1995, pet. ref'd).

State's Exhibit 27 is a certified copy of the "Temporary Ex Parte Protective Order with Temporary Restraining Orders and Order Setting Hearing" entered by the trial court on May 2, 1994. Based upon the information provided by Johnson, the trial court found that there was a clear and present danger of

family violence and that Johnson would suffer immediate and irreparable injury, loss, or damage before notice could be served upon appellant and a hearing held on the matter.

State's Exhibit 28 is a certified copy of the temporary orders entered by the trial court on June 1, 1994. Following a hearing held on May 20, 1994, the trial court enjoined both parties in many respects, including harassing communications, and threatening or inflicting bodily injury upon one another or the children. The substance of the hearing was not made known to the jury and the trial court made no findings that appellant had committed family violence. Although State's Exhibits 27 and 28 do not, standing alone, reflect the commission of an extraneous offense, they tend to connect appellant to the commission of the extraneous offenses alleged by Johnson in State's Exhibits 24 and 25.

State's Exhibit 29 is the medical record of the victim's emergency room treatment on November 17, 1992. In the "Nurse's Notes" section of the Emergency–Outpatient Record are the following comments: "was in altercation [with] husband. [H]usband bent fingers back. . . ." The radiology report contains the information that "husband bent index & middle fingers."

Jimmie Johnson, the victim's mother, testified that sometime around May 1, 1993, she overheard an argument between appellant and Johnson as she walked up to the front door of their home. As she approached, she heard appellant and Johnson arguing about money. She then heard appellant state, "You keep on and I'm going to shoot you and your whole damn crazy-ass family. . . ."

In addition to testifying about the shooting, Brittany Johnson testified that on one occasion when they were returning from a party from her aunt's house in Crane, Texas, she heard appellant tell her mother that he was going to kill her and the whole crazy family. She testified that appellant had hurt her mother on other occasions by twisting her arm and slapping her.

Finally, appellant contends the trial court erred in permitting the prosecutor to cross-examine him concerning extraneous offenses committed against the victim. The prosecutor asked appellant whether he assaulted the victim on July 14, 1991, June 28, 1992, November 17, 1992, September 12, 1993, February 7, 1994, and June 3, 1994. Appellant said that he did not remember July 14, 1991 or June 28, 1992. He admitted grabbing her by the wrist on November 17, 1992, but said that he did so only in an effort to retrieve his car keys from her. He denied assaulting Johnson on June 3, 1994 or February 7, 1994. In fact, he claimed that Johnson assaulted him on the latter date.

### Relevance Beyond Character Conformity

 Appellant first contends that the evidence concerning his prior assaults and threats does not have relevance beyond character conformity. It is the general rule that an accused may not be tried for some collateral crime or for being a criminal generally. Tex.R.Crim.Evid. 404(b); *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983). In the face of a proper objection, evidence of other wrongful acts is not admissible to prove the character of the person to establish that he acted accordingly regarding the alleged offense. *Montgomery*, 810 S.W.2d at 386; *Lazcano v. State*, 836 S.W.2d 654, 657 (Tex.App.—El Paso 1992, pet. ref'd). An extraneous offense may be admissible, however, if it has relevance apart from its tendency to prove the character of a person in order to show that he acted in conformity therewith. *Montgomery*, 810 S.W.2d at 387; *Lazcano*, 836 S.W.2d at 657. Evidence which logically serves such purposes as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" is relevant beyond its tendency to prove conforming character. *Montgomery*, 810 S.W.2d at 387; *Lazcano*, 836 S.W.2d at 657; Tex.R.Crim.Evid. 404(b). Extraneous offenses are also admissible to rebut a defensive theory. *Crank v. State*, 761 S.W.2d 328, 341 (Tex.Crim.App.1988), *overruled on other grounds, Alford v. State*, 866 S.W.2d 619, 624 n. 8 (Tex.Crim.App.1993); *Yohey v. State*, 801 S.W.2d 232, 236 (Tex.App.—San Antonio 1990, pet. ref'd). Finally, in a murder prosecution, evidence relating to the previous relationship between the defendant and the deceased is admissible, as is evidence relating to the condition of the defendant's mind at

the time of the offense. Former Tex.Penal Code § 19.06.[1]

Whether objected-to evidence of other crimes, wrongs, or acts has relevance apart from character conformity is a question for the trial court. *Montgomery*, 810 S.W.2d at 391; *Castillo v. State*, 910 S.W.2d 124, 127 (Tex.App.—El Paso 1995, pet. ref'd, untimely filed). The trial court must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence. *Id.* An appellate court should not reverse the trial court whose ruling was within the zone of reasonable disagreement. *Id.*

The indictment alleged that appellant intentionally caused the death of his wife by shooting her with a firearm. Appellant urged as a defensive theory throughout trial that he committed voluntary manslaughter, not murder. He also asserted that the victim was the aggressor in the altercation. Thus, appellant's intent, i.e., whether it was his conscious objective or desire to cause Johnson's death was a material issue at trial. Likewise, appellant's state of mind, i.e., whether he shot the victim while acting under the immediate influence of sudden passion arising from an adequate cause, was also a material issue. Evidence that appellant had physically assaulted the victim on numerous occasions in the past and had threatened to shoot her reflects an ongoing course of violent conduct toward the victim and tends to make it more probable that it was his conscious objective or desire to cause her death. Further, this same evidence sheds light on appellant's state of mind at the time of the offense and tends to rebut the defensive theories that the victim was the aggressor and that appellant acted under the immediate influence of sudden passion. Accordingly, the trial court did not abuse its discretion in concluding that the admitted evidence is relevant to material issues other than appellant's character. *See Sattiewhite v. State*, 786 S.W.2d 271, 284–85 (Tex.Crim.App.1989)(evidence showing defendant's prior assaults of victim and threats to shoot victim in head were relevant to issue of defendant's intent and refuted defendant's claim that he acted under sudden passion); *Hernandez v. State*, 914 S.W.2d 226, 232–33 (Tex.App.—Waco 1996, no pet.)(evidence that defendant hit the victim in the stomach during an argument two weeks before her death is probative of defendant's intent and rebutted defendant's assertion that he accidentally caused her death); *Pena v. State*, 864 S.W.2d 147, 150 (Tex.App.—Waco 1993, no pet.)(in prosecution of defendant for killing wife by cutting her throat, evidence of two prior assaults and threats to cut wife's throat were relevant to show the defendant's previous relationship with the victim as well as his state of mind at the time of the offense); *Posey v. State*, 840 S.W.2d 34, 37–38 (Tex.App.—Dallas 1992, pet. ref'd)(in prosecution for murder of wife, prosecutor was properly allowed to cross-examine defendant as to whether defendant tried to rape his wife several days before she was killed; evidence of alleged rape and defendant's resulting black eye were relevant to refute defendant's argument that he acted under sudden passion when he killed wife, to show relevant facts and circumstances surrounding killing, to show relationship between defendant and wife, and to show wife's condition at time of offense); *Burton v. State*, 762 S.W.2d 724, 727 (Tex.App.—Houston [1st Dist.] 1988, no pet.)(in prosecution of defendant for attempted murder of wife, evidence showing numerous prior assaults and threats directed at wife and children were admissible to refute defendant's assertions that he went armed to see his wife at her workplace because he feared her lover, that wife "lunged" at him, and that shooting was accidental).

---

1. Former § 19.06 provided: In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense. Acts 1973, 63rd Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex.Gen.Laws 1123, 1124, amended by Acts 1991, 72nd Leg., R.S., ch. 48, § 1, 1991 Tex.Gen. Laws 474, 475 [current version at Tex.Code Crim. Proc.Ann. art. 38.36(a)(Vernon Supp.1996) ].

### Rule 403

■ Appellant contends that the evidence should have been excluded under TEX. R.CRIM.EVID. 403. Pursuant to Rule 403, extraneous offense evidence which possesses relevance beyond character conformity is presumed admissible subject to exclusion only if the opponent of the evidence timely objects and demonstrates that the danger of unfair prejudice substantially outweighs its probative value. *Montgomery*, 810 S.W.2d at 389; *Lazcano*, 836 S.W.2d at 657. An appellate court should not make a de novo review of the record with a view of making a wholly independent judgment whether the probative value of the extraneous act is substantially outweighed by the danger of unfair prejudice. *Montgomery*, 810 S.W.2d at 392; *Castillo*, 910 S.W.2d at 127. In conducting our review, we must measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is to be made. *Id.*

■ Relevant criteria include, that the ultimate issue was not seriously contested by the opponent; that the state had other convincing evidence to establish the ultimate issue to which the extraneous misconduct was relevant; that the probative value of the misconduct evidence was not, either alone or in combination with other evidence, particularly compelling; and that the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious. *Montgomery*, 810 S.W.2d at 392–93. Under this approach, we determine the admissibility of extraneous offense evidence by reviewing not only the relevance of that evidence, but the state's need for it as well. *See Montgomery*, 810 S.W.2d at 392; *Garcia v. State*, 827 S.W.2d 27, 30 (Tex.App.—Corpus Christi 1992, no pet.). Applying this criteria to the issue of intent, evidence of extraneous acts is admissible to prove scienter, where intent or guilty knowledge is an essential element of the state's case and cannot be inferred from the act itself. *See Montgomery*, 810 S.W.2d at 392; *Garcia*, 827 S.W.2d at 30.

■ Other than generally alleging that this evidence is prejudicial, appellant does not explain why the trial court erred in failing to exclude this evidence pursuant to Rule 403. Appellant's defensive theories effectively controverted the state's case against him. The state attempted to refute those theories by proving that appellant had engaged in a continuing course of violent conduct towards the deceased which eventually culminated in her death at appellant's hands. Without this evidence regarding appellant's prior conduct toward the deceased, the state would have been unable to effectively challenge appellant's assertions concerning his state of mind and intent at the time of the offense. Thus, the evidence possesses significant probative value. The fact that the jury eventually decided the sudden passion/state of mind issues in appellant's favor does not lessen the probative value of this evidence.

Although any extraneous offense results in some prejudicial effect, the evidence in this case did not result in unfair prejudice to appellant. Further, we note that the trial court included a limiting instruction in the jury charge. Given the substantial probative value of this evidence, the trial court did not abuse its discretion in refusing to exclude the extraneous acts evidence under Rule 403. *See Sattiewhite*, 786 S.W.2d at 285; *Posey*, 840 S.W.2d at 38; *Burton*, 762 S.W.2d at 727. Points of Error Eleven through Fifteen are overruled.

### ADMISSION OF HEARSAY EVIDENCE

We turn now to the remaining contention raised in Points of Error One through Five that the trial court erred in admitting State's Exhibits 24 through 28 over appellant's hearsay objection. Appellant does not analyze the admissibility of this evidence under the Texas Rules of Criminal Evidence. Instead, he places primary reliance upon several cases decided prior to the adoption of the Rules of Criminal Evidence which hold that evidence of the parties' prior relationship may include showing that a divorce had been filed and was pending at the time of the killing or that the victim had sought a restraining order against the defendant, *Vaughn v. State*, 607 S.W.2d 914, 921 (Tex.Crim.App.1980)(not error to admit the testimony of an attorney showing that the deceased had filed for divorce and asked for a temporary restraining

order from the defendant), but does not allow the admission of hearsay in the form of the contents of a divorce petition or a temporary restraining order. *Erwin v. State*, 531 S.W.2d 337, 338 (Tex.Crim.App.1976)(divorce petition filed by the deceased alleged threats, harassment, violent temper, and fear of bodily injury and contained an allegation that the defendant had run his wife's car off the highway at 70 miles per hour, causing bodily injury to her and damage to the car, held to be inadmissible hearsay); *Barker v. State*, 509 S.W.2d 353, 354 (Tex.Crim.App.1974)(in prosecution for assault with intent to murder an acquaintance of defendant's former wife, it was error to admit petition for annulment which contained allegations that the defendant had procured the marriage by the infliction of many acts of violence upon former wife); *Yates v. State*, 489 S.W.2d 620, 621 (Tex.Crim.App.1973)(error to admit pleadings and temporary restraining orders in a divorce suit between the defendant and the deceased).

We cannot rely solely on these cases in deciding the issues raised in Points of Error One through Five because the admissibility of evidence must be analyzed pursuant to the Rules of Criminal Evidence. *See Long v. State*, 823 S.W.2d 259, 270 (Tex.Crim.App. 1991); *Perkins v. State*, 902 S.W.2d 88, 93 (Tex.App.—El Paso 1995, pet. ref'd). Further, we find the reasoning of these cases somewhat doubtful when we consider that they are premised upon a rule that hearsay statements of the deceased are not admissible in a prosecution for uxoricide. *Jones v. State*, 515 S.W.2d 126, 128 (Tex.Crim.App.1974)(citing as examples of this rule's application, several cases holding that the contents of divorce petitions filed by the deceased, annulment petitions filed by the deceased, and the contents of temporary restraining orders against the defendant sought by the deceased are inadmissible hearsay). Such a blanket exclusion of statements made by the deceased spouse encourages automatic exclusion of this evidence without analysis of whether the statements

may nevertheless be admissible pursuant to an exception to the hearsay rule.[2] Because we find appellant failed to preserve the asserted error, however, we need not decide whether the reasoning set forth in the above cases has continued viability under the Rules of Criminal Evidence or whether the deceased's statements in this case are inadmissible hearsay under the Rules.

### Waiver

■ Appellant objected to State's Exhibits 24 through 28 in their entirety as hearsay. The prosecutor responded that he was not offering these exhibits for the truth of the matter asserted, but to show the state of mind of both the deceased and appellant. With respect to appellant's state of mind, the prosecutor explained that the exhibits tended to show that appellant knew that he had been ordered to stay away from Johnson and her home and that he knowingly placed himself in a situation where he might be provoked. Our review of State's Exhibits 24 through 28 reveals that portions of the exhibits are admissible under the prosecutor's theories while other portions may be objectionable as hearsay. When an exhibit contains both admissible and inadmissible material, the objection must specifically refer to the material that is objectionable. *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex.Crim.App.1995); *Brown v. State*, 692 S.W.2d 497, 501 (Tex. Crim.App.1985). If the party who objects to an exhibit does not specify which part of the exhibit is not admissible, the error in admitting the exhibit is not preserved for review. *Brown*, 692 S.W.2d at 501; *Porter v. State*, 623 S.W.2d 374, 385 (Tex.Crim.App.1981). By failing to specify which parts of State's Exhibit 24 through 28 are inadmissible hearsay, appellant waived the error asserted in Points of Error One through Five.

■ Error in the admission of these exhibits is waived for a second reason. As stated above, the state offered Exhibits 24 through 28, not for the truth of the matter asserted therein, but for the limited purpose

**2.** Why the courts found it necessary to articulate a special rule excluding the hearsay statements of wives murdered by their husbands is curious, at best. To the extent it may be reflective of an overall attitude which minimizes domestic violence, it is inappropriate and unwarranted. *See* Gender Bias Task Force of Texas, Final Report, February 1994.

of showing the state of mind of both the deceased and appellant. Again, our review of the exhibits reveals that at least portions of the exhibits may have been admissible for this limited purpose. Where evidence is offered for a specific purpose, the party opposing its admission is entitled to a limiting instruction informing the jury of the limited purpose of the evidence. *Lane v. State*, 822 S.W.2d 35, 40 (Tex.Crim.App.1991); *Porter v. State*, 709 S.W.2d 213, 215 (Tex.Crim.App. 1986); Tex.R.Crim.Evid. 105(a). Appellant, however, refused the trial court's offer of a limiting instruction which could have ensured that the jury did not make use of the evidence for an impermissible purpose. *See Lane*, 822 S.W.2d at 40. Having refused the limiting instruction, appellant invited the error of which he now complains on appeal, namely, that the exhibits, in their entirety, were impermissibly considered by the jury for the truth of the matter asserted. Accordingly, the error is waived. *See Capistran v. State*, 759 S.W.2d 121, 124 (Tex.Crim. App.1982)(when a party invites error, he cannot later complain of or attempt to gain an advantage based upon that error).

### Harmless Error

■■■ Even if appellant had properly preserved his hearsay objection to the objectionable portions of State's Exhibits 24 through 28, any error in their admission would be harmless. Tex.R.App.P. 81(b)(2). Rule 81(b)(2) mandates that the appellate court focus upon the error and determine whether it contributed to the conviction or the punishment. *Harris v. State*, 790 S.W.2d 568, 585 (Tex.Crim.App.1989); *Burks v. State*, 876 S.W.2d 877, 904–05 (Tex.Crim.App.1994); *Perez v. State*, 824 S.W.2d 565, 568 (Tex. Crim.App.1992). An error is harmless if it did not interfere with the integrity of the trial process sufficiently to affect the outcome of the trial. *Burks*, 876 S.W.2d at 905; *Harris*, 790 S.W.2d at 587; *Perez*, 824 S.W.2d at 568.

3. Appellant challenges the admission of State's Exhibit 2 and portions of Hill's testimony in Points of Error Seven and Eleven. We have already overruled Point of Error Eleven, and as will be seen, Point of Error Seven is also overruled. Appellant challenges the admission of

### State's Exhibits 24 and 25

■■■ In arguing that the admission of State's Exhibits 24 and 25 is harmless, the state points to the properly-admitted testimony of other witnesses showing that appellant had assaulted or threatened Johnson in the past.[3] Shirley Hill, executive director of the Monahans Housing Authority, testified that Johnson lived at the Monahans Housing Authority and had worked for her as a clerk/secretary until Johnson's death. Hill testified that when Johnson filled out her application to live at the Housing Authority on September 15, 1993, she checked a space on the application indicating that she had been displaced by domestic violence. Hill investigated this claim for a preference and verified it by reviewing police reports Johnson brought to her. She also testified that during the year and a half that Johnson worked for her, she noticed that Johnson occasionally had bruises, she had an injured wrist on another occasion, and she was often upset and agitated. Hill stated that Johnson told her that she was afraid that appellant would hurt her or take her daughter Tia.

Jimmie Johnson, the victim's mother, testified that sometime around May 1, 1993, she overheard an argument between appellant and Johnson as she walked up to the front door of the home. As she approached, she heard appellant and Johnson arguing about money. She then heard appellant state, "You keep on and I'm going to shoot you and your whole damn crazy-ass family...."

In addition to testifying about the shooting, Brittany Johnson testified about threats and acts of violence appellant had committed in the past. She said that when returning from a party from her aunt's house in Crane, Texas, she heard appellant tell her mother that he was going to kill her and the whole crazy family. She testified that appellant had hurt her mother on other occasions by twisting her arm and slapping her.

State's Exhibit 29 in Point of Error Twelve, the admission of Jimmie Johnson's testimony in Point of Error Thirteen, and the admission of Brittany Johnson's testimony in Point of Error Fourteen. Each of these points has already been overruled.

Finally, the trial court admitted State's Exhibit 29 which is the medical record concerning Johnson's treatment for an injured hand at the Emergency Room of Ward Memorial Hospital on November 17, 1992. The report reflects that Johnson told hospital personnel that her husband injured her hand by bending her fingers backward. Her injury was assessed as a hyper flexion injury and crush-type injury to the carpal bone.

The above evidence established the same facts contained in Exhibits 24 and 25 of which appellant complains on appeal, namely, evidence of the prior assaults and threats committed by appellant against the victim. Consequently, any error in the admission of State's Exhibits 24 and 25 is harmless beyond a reasonable doubt. Points of Error One and Two are overruled.

### State's Exhibit 26

In asserting harm in the admission of this evidence, appellant's entire argument focuses upon the effect of these exhibits on the issue of intent. While the evidence in the other exhibits concerning prior acts of family violence pertains to appellant's intent, the affidavit of indigency concerns only the victim's financial status at the time she filed the divorce petition. Appellant does not explain and we are unable to perceive any harm in the admission of this exhibit. Point of Error Three is overruled.

### State's Exhibit 27 and 28

██ Appellant does not explain the harm in admitting State's Exhibit 28. In asserting harm in the admission of State's Exhibit 27, appellant points to the court's finding that there was a clear and present danger of family violence and Johnson would suffer immediate and irreparable injury unless appellant was ordered to do or refrain from doing certain acts. As stated above, the state offered Exhibits 27 and 28 for the limited purpose of establishing that appellant went to Johnson's residence with the knowledge that he had been ordered to stay away and that he might be provoked. Appellant refused the trial court's offer of a limiting instruction. Thus, appellant cannot now claim harm in the jury's consideration of Exhibits 27 and 28 for all purposes. Furthermore, the jury acquitted appellant of murder and found him guilty of the lesser-included offense of voluntary manslaughter. In so doing, it rejected the state's theory that the killing was premeditated and the culmination of appellant's pattern of violent behavior towards Johnson. For the above reasons, any error in the admission of State's Exhibits 27 and 28 over appellant's hearsay objection is harmless beyond a reasonable doubt. Points of Error Four and Five are overruled.

### ADMISSION OF VIDEOTAPED STATEMENT OF BRITTANY JOHNSON

In Point of Error Six, appellant contends that the trial court erred in admitting State's Exhibit 30, which is a videotaped statement made by the victim's eight-year-old daughter, Brittany Johnson. He argues that the statement is inadmissible under Rule 801(e)(1)(B) and it improperly bolstered Brittany's testimony.

Brittany testified at trial about the shooting of her mother. During cross-examination, appellant questioned Brittany at length about whether her testimony was based, not upon what she saw, but upon what someone else told her, including her grandmother or someone at the Harmony Home Children's Advocacy Center in Odessa. Appellant went on to question Brittany about her testimony that she heard appellant state on one occasion to the victim that he "was going to kill my momma and he was going to kill the whole crazy family." Brittany admitted during cross-examination that her grandmother, Jimmie Johnson, had talked to her about appellant making that statement.

Immediately following Brittany's testimony, the state called Eve Flores, an interviewer at the Harmony Home Children's Advocacy Center in Odessa, to testify about her interview of Brittany on the day following the shooting. The state specifically offered State's Exhibit 30 pursuant to Rule 801(e)(1)(B). Appellant raised only a "bolstering" objection which the trial court overruled. In the portion of the tape admitted before the jury, Brittany told Flores about

her mother's argument with appellant, the shooting, and what she did afterwards.

### *Waiver*

■ The state first contends that appellant's "bolstering" objection does not preserve for review the contention that the videotape is inadmissible under Rule 801(e)(1)(B). We agree.

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. TEX.R.APP.P. 52(a); *Purser v. State,* 902 S.W.2d 641, 649 (Tex.App.—El Paso 1995, no pet.); *De La Paz v. State,* 901 S.W.2d 571, 577 (Tex.App.—El Paso 1995, pet. ref'd). Further, Rule 103(a)(1) of the Rules of Criminal Evidence provides that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and in case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. TEX.R.CRIM.EVID. 103(a)(1); *Ortiz v. State,* 825 S.W.2d 537, 540 (Tex.App.—El Paso 1992, no pet.); *Hernandez v. State,* 825 S.W.2d 765, 770 (Tex.App.—El Paso 1992, no pet.). If the trial objection does not comport with the error raised on appeal, the asserted error is waived. TEX. R.APP.P. 52(a); *Penry v. State,* 903 S.W.2d 715, 753 (Tex.Crim.App.1995); *Barnes v. State,* 876 S.W.2d 316, 325 (Tex.Crim.App. 1994); *De La Paz,* 901 S.W.2d at 577–78. Even though the state expressly proffered the videotape pursuant to Rule 801(e)(1)(B), appellant never urged as a basis for exclusion of the videotape the grounds he now raises on appeal. Accordingly, the asserted error is waived. *See Meyers v. State,* 865 S.W.2d

523, 524 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd)(defendant's "hearsay" and "Rule 801" objections to admission of prior consistent statement under Rule 801(e)(1)(B) did not preserve claimed error that, in contravention of Rule 801(e)(1)(B), the exhibit contained statements made after any motive to fabricate or any improper influence had arisen); *Ray v. State,* 764 S.W.2d 406, 411 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd)(trial objection that evidence of prior consistent statements was not admissible under Rule 801(e)(1)(B) because defendant had not attempted to impeach witness, and therefore, the state did not need to rehabilitate him, did not comport with argument raised on appeal that the witness had a motive to lie before the prior statement was made so that it would not be admissible under that rule); *see also Cohn v. State,* 849 S.W.2d 817, 819 (Tex.Crim.App.1993)[mere "bolstering" objection does not preserve complaint under Rule 608(a) ].[4]

■ Appellant also raises on appeal his contention that the videotape impermissibly bolstered Brittany's testimony. Bolstering occurs when additional evidence is used to add truthfulness or greater weight to earlier, unimpeached evidence offered by that same party. *Rousseau v. State,* 855 S.W.2d 666, 681 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). Stated differently, "bolstering" refers to any evidence the sole purpose of which is to convince the fact finder that a particular witness or source of evidence is worthy of credit, without substantively contributing to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Cohn,* 849 S.W.2d at 819; TEX.R.CRIM.EVID. 401.

During cross-examination, appellant repeatedly suggested that Brittany's testimony was based upon what somebody else, includ-

---

4. The Court of Criminal Appeals noted in *Cohn* that "bolstering" is an objection which predates the Texas Rules of Criminal Evidence, and the only apparent "bolstering" provisions in the rules are found in TEX R.CRIM.EVID. 608(a)(allowing opinion or reputation evidence only after impeachment of a party's witness) and in TEX. R.CRIM.EVID. 612(c)(prohibiting the use of prior

consistent statements of a witness for the sole purpose of enhancing his credibility). *Cohn,* 849 S.W.2d at 819–20; *see also Yount v. State,* 872 S.W.2d 706, 712 (Tex.Crim.App.1993)(noting that "bolstering," as an evidentiary concept, barely survived the promulgation of the Texas Rules of Criminal Evidence).

ing her grandmother, told her and not upon what she observed and heard. He also impeached her with a prior inconsistent statement made in the videotaped interview. Thus, State's Exhibit 30 does not fall within the above definitions of "bolstering" evidence and it was properly admitted for the purpose of rehabilitating Brittany after she had been impeached. Point of Error Six is overruled.

## TESTIMONY OF SHIRLEY HILL

■ In Point of Error Seven, appellant contends that the trial court erred in admitting certain testimony by Shirley Hill over his hearsay objection. Appellant complains that Hill was permitted to testify that the deceased told her that she was afraid that if Hill told appellant that he could not return to the residence, that appellant would hurt her or take Tia.[5] Appellant argues that the statements are merely statements of belief and were offered to prove the truth of the fact believed. The state replies that the statements are admissible under TEX.R.CRIM. EVID. 803(3).[6] Appellant relies on *Love v. State*, 581 S.W.2d 679, 681 (Tex.Crim.App. 1979) in which the Court of Criminal Appeals held the trial court erred in admitting the testimony of three witnesses relating their conversations with the deceased. One witness testified that the deceased stated about one month before the attack: "I am tired of running from John," and "I know he is going to get me sooner or later." A second witness testified that the deceased told her the day before the attack that she "was tired of running and did not mind dying, but did not think John had a right to say when she had to die." Finally, a third witness testified that the deceased told her that the defendant had broken into her apartment several times, and on one of these occasions, threatened her with a knife. The court found that the testimony of these three witnesses was inadmissible hearsay which did not come within the

state of mind exception to the hearsay rule because it was offered for the truth of the matter asserted. *Love* does not support appellant's contention for two reasons.

First, *Love* was decided prior to the adoption of the Texas Rules of Criminal Evidence. We must analyze the admissibility of this evidence pursuant to those rules, and in particular, Rule 803(3). *See Long*, 823 S.W.2d at 270; *Perkins*, 902 S.W.2d at 93.

Second, we find *Love* distinguishable. In *Love*, the statements concern the victim's beliefs and opinions about past and future events and were offered to prove the truth of the fact remembered or believed. Thus, they would be inadmissible under Rule 803(3). Here, Johnson's statement concerns her fear about what might happen in the future if Hill confronted appellant about coming to Johnson's residence. Hill's testimony was not offered to show that appellant would in fact hurt Johnson or take Tia if confronted, but to reveal her state of mind at the time of the offense. Even though Hill's testimony was admitted before appellant testified, it later served to rebut appellant's claims that the victim was the aggressor and physically attacked him and that she threatened to take Tia from him. Therefore, we find that the statements are admissible pursuant to TEX. R.CRIM.EVID. 803(3). *See Pena v. State*, 864 S.W.2d 147, 149–50 (Tex.App.—Waco 1993, no pet.)(testimony that victim stated that she wanted to leave defendant but felt economically trapped was offered to show her state of mind and was not offered to prove the truth of the victim's statement); *Whitmire v. State*, 789 S.W.2d 366, 371 (Tex.App.—Beaumont 1990, pet. ref'd)(statement made by murder victim to one of the state's witnesses to the effect that he had gotten himself into a predicament that he couldn't get out of was properly admitted under state of mind hearsay exception; statement was offered not to

---

5. Hill testified that appellant was prohibited from being at Johnson's residence as part of the Housing Authority's rules. This conversation with Johnson occurred when Hill told her that she was going to talk to appellant and tell him to stay away.

6. Rule 803(3) provides an exception to the hearsay rule for a statement of the declarant's then

existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

prove that victim was in some sort of predicament from which he could not escape, but was offered to show victim's state of mind that he, and not defendant, was the trapped partner in their marriage).

Even if the admission of Hill's testimony is erroneous, it is harmless. TEX.R.APP.P. 81(b)(2). Quite obviously, the jury disregarded Hill's testimony in this regard and believed appellant's testimony that the victim provoked him. Therefore, no harm is shown. Point of Error Seven is overruled.

### ADMISSION OF PHOTOGRAPHS

In Points of Error Eight through Ten, appellant challenges the admission of four enlarged photographs of the deceased, State's Exhibits 3A, 4A, 16A, and 17A. He concedes their relevance, but argues that their prejudicial effect significantly outweighs any probative value under Rule 403 of the Texas Rules of Criminal Evidence.

■■■ As a general rule, photographs are admissible when verbal testimony as to the matters depicted in the photos is also admissible. *Hicks v. State*, 860 S.W.2d 419, 426 (Tex.Crim.App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2725, 129 L.Ed.2d 848 (1994); *Hernandez v. State*, 819 S.W.2d 806, 819 (Tex.Crim.App.1991), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992). Rule 403 provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. TEX.R.CRIM. EVID. 403. Several factors may be considered in determining whether the danger of unfair prejudice substantially outweighs the probative value of photographs including

(1) the number of exhibits offered;

(2) their gruesomeness, detail, and size;

(3) whether they are black and white or color;

(4) whether they are close-up;

(5) whether the body is naked or clothed; and

(6) the availability of other means of proof and the circumstances unique to each individual case.

*Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim.App.1995); *Hicks*, 860 S.W.2d at 426. Ultimately, the admissibility of photographs over any challenge is within the sound discretion of the trial judge. *Sonnier*, 913 S.W.2d at 518; *Jones v. State*, 843 S.W.2d 487, 500–01 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993).

■■■ Other than a photograph offered for purposes of identification, the four challenged exhibits are the only photographs of the deceased introduced at trial. These exhibits are 12" × 18" enlargements of 4"x 6" photographs. Exhibits 3A and 4A are color photographs of the deceased at the scene which depict the body from two different angles. They depict her lying on her back in the doorway of her neighbor's home and are taken from a distance of several feet from the body. Although a sheet is draped across her lower body, the torso is partially nude because the photographs were taken after medical personnel cut away her blouse during their efforts to revive her. The bullet wound in her throat is visible in Exhibit 3A, and blood is visible on her torso, her blouse, and on the floor in both Exhibits 3A and 4A.

State's Exhibits 16A and 17A are color photographs depicting Johnson's wounds after her clothes had been removed and the body cleaned prior to the autopsy. Dr. Jan Garavaglia, the medical examiner who performed the autopsy, used these exhibits in explaining the path the bullets traveled through Johnson's body and in describing her injuries. Exhibit 16A shows the entrance gunshot wound to the base of Johnson's neck. This photo includes a view of her upper torso and a portion of her face. Exhibit 17A depicts the entrance and exit wounds caused by a bullet which struck Johnson in the upper right portion of her back. Exhibits 16A and 17A directly related to Dr. Garavaglia's testimony on the cause of death.

Each of the exhibits possesses significant probative value because they clarify and support observations and conclusions about the victim's injuries and reveal the manner of death. *Moss v. State*, 860 S.W.2d 194, 196 (Tex.App.—Texarkana 1993, no pet.); *Juhasz*

*v. State,* 827 S.W.2d 397, 402 (Tex.App.—Corpus Christi 1992, pet. ref'd). Contrary to appellant's opinion of the exhibits, the four photographs are not particularly gruesome or gory despite their enlarged size. Further, they are limited in number and are not cumulative. We conclude the trial court did not abuse its discretion in determining that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See Etheridge v. State,* 903 S.W.2d 1, 21 (Tex.Crim.App.1994); *Corral v. State,* 900 S.W.2d 914, 917–18 (Tex. App.—El Paso 1995, no pet.); *Moss,* 860 S.W.2d at 196. Points of Error Eight through Ten are overruled.

Having overruled Points of Error One through Fifteen, the judgment of the trial court is affirmed.