# NO. 12-18-00080-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DANIEL JOSEPH SCOTT,* *APPELLANT* | § | *APPEAL FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Daniel Joseph Scott appeals his conviction for murder. In one issue, he argues the trial court abused its discretion in admitting certain extraneous offense/bad acts evidence during the guilt/innocence phase of his trial. We affirm.

### BACKGROUND

On the evening of December 27, 2016, Appellant shot his wife, Alicia Scott, in the center left forehead with a .357 caliber revolver at their home in Henderson County, Texas. Appellant called 911 and told the operator that he accidentally shot Alicia. Appellant drove Alicia to the hospital but she died from the wound.

Appellant maintained that he shot Alicia by accident. Appellant told law enforcement he and Alicia planned to go to the Dallas area that evening to engage in a "three way" sexual encounter with another man. Appellant told law enforcement he and Alicia regularly engaged in sexual activities with other men. He said he was practicing his "quick draw" technique with his pistol because they were traveling to a dangerous area. He indicated he was pulling the gun from his hip, spinning the cylinder, and pulling the trigger. Appellant told law enforcement he believed the gun was unloaded, because Alicia put the bullets on the couch next to the gun. He told law enforcement that he pulled the trigger once or twice before accidentally shooting Alicia, and the

gun "clicked" each time. He said Alicia was in the kitchen and he was in the living room, Alicia came around the corner as he was pulling the trigger, and the gun fired and struck her in the forehead. Appellant denied that he and Alicia were arguing or experiencing any marital problems.

When law enforcement searched the home, they found the gun fully loaded except for the round that killed Alicia. None of the rounds in the gun showed a primer strike, indicating the rounds were not fired. Text messages between Appellant and Alicia revealed they had been arguing prior to the shooting.

At Appellant's trial, the State solicited testimony from witnesses that Appellant was controlling and abusive towards Alicia during their twelve year marriage. Appellant maintained that he accidentally shot Alicia, and criticized law enforcement's investigation, arguing that law enforcement conducted a poor investigation because they assumed Appellant intentionally shot Alicia. The jury found Appellant "guilty" and sentenced him to imprisonment for seventy years. This appeal followed.

## EXTRANEOUS OFFENSE/BAD ACTS

In his sole issue, Appellant contends that the trial court abused its discretion in allowing the testimony of two witnesses: his friend, John Blake, and his former girlfriend, Mary Watson. Appellant argues this evidence was inadmissible character evidence, and that its probative value was outweighed by its prejudicial effect.

### Standard of Review and Applicable Law

We review a trial court's ruling on the admissibility of extraneous offense or bad acts evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will not reverse unless the trial court's ruling falls outside the "zone of reasonable disagreement." *Id.*

Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. Relevant evidence is generally admissible. TEX. R. EVID. 402. Evidence of other crimes or wrongs by the defendant, however, is not admissible if it is relevant only to prove the character of the defendant in order to show that he acted in conformity therewith. TEX. R. EVID. 404(b). To be admissible, extraneous offense evidence must be relevant apart from showing mere character conformity; it must tend to establish some elemental or evidentiary fact

or rebut some defensive theory. *Montgomery v. State*, 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1991); TEX. R. EVID. 404(b). Even if an extraneous offense is relevant apart from character conformity, it may still be excluded if its relevance is substantially outweighed by the danger of unfair prejudice. *Montgomery*, 810 S.W.3d at 387; TEX. R. EVID. 403.

The erroneous admission of extraneous offense evidence is nonconstitutional error and we must disregard it unless it affects Appellant's substantial rights. *See, e.g., Peters v. State*, 93 S.W.3d 347, 354 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *Phelps v. State*, 999 S.W.2d 512, 520 (Tex. App.—Eastland 1999, pet. ref'd); TEX. R. APP. P. 44.2(b). The erroneous admission of evidence does not affect substantial rights if, after examining the record as a whole, the appellate court has fair assurance that the error did not influence the jury, or had but slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). When making this determination, we "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, [and] the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.* We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, and even voir dire, if applicable. *Id.* at 355-56. Evidence of the defendant's guilt must also be considered when conducting a thorough harm analysis. *Id.* at 358.

## Blake's Testimony

Blake testified he met Appellant and Alicia when he was fifteen and was good friends with both for ten to twelve years. Blake testified he lived with Appellant and Alicia on multiple occasions throughout his adult life for years and months at a time.

Blake testified that Appellant began mentally abusing Alicia early in their relationship, threatening to leave her if she would not have sex with him, belittling her and her family and, on several occasions, driving her twenty miles from her home, forcing her out of the car and driving off, but eventually allowing her back in the car and taking her home. Blake testified that Appellant isolated Alicia from friends and family, becoming angry if she tried to contact them.

Blake testified to an escalation of the abuse over time. He went on several work trips with Appellant and Alicia. Appellant, a commercial truck driver, would make Alicia kneel next to the driver's seat while he punched and struck her with his fist at random, seemingly for no reason. Blake further observed Appellant force Alicia to stand nude in the cab of the truck with the lights on, sometimes all night, to display her to other truck drivers. Blake testified that Appellant forced

3

Alicia to engage in sexual activity with strangers for money and further insisted that Blake engage in sexual intercourse with Alicia. Blake observed Appellant hit Alicia on numerous occasions with his hands, and once with an extension cord on her legs. Blake testified that Appellant avoided hitting Alicia in the face, inflicting most of the physical abuse below her neck. Blake testified that Alicia was afraid of Appellant, but refused to leave him because he threatened to hurt her sisters and take her children.

Blake testified that he ended his friendship with Appellant over Appellant's treatment of Alicia. Specifically, Blake described an incident wherein Appellant wanted Blake to have sex with Alicia. Blake refused, so Appellant put Alicia in the car, nude, and drove her to a friend's house. When they arrived, Appellant tried to persuade the friend to have sex with Alicia, but the friend refused. Appellant then drove to Blake's father's house, and tried to arrange for Blake's father to have sex with Alicia. This incident led Blake to end the friendship.

Blake testified that his mother was shot in the head and killed when he was a child. He believed his stepfather committed the murder, but was never charged. Blake said Appellant was interested in his mother's murder, specifically how his stepfather escaped responsibility, and broached the topic often. Blake testified he was not surprised when he heard that Appellant murdered Alicia.

## Admissibility of Blake's Testimony

Appellant argues that the trial court abused its discretion in admitting Blake's testimony because it is improper character evidence and its probative value is outweighed by its prejudicial effect. The State argues that Blake's testimony was properly admitted because it is relevant to Appellant's intent, to rebut his accident defense, and to show the relationship between Appellant and Alicia. The State argues that the probative value of Blake's testimony is not outweighed by its prejudicial effect.

The trial court allowed Blake's testimony under Article 38.36 of the Texas Code of Criminal Procedure, and for the purposes of showing Appellant's intent, plan, or absence of mistake or accident, and to rebut his defense. Article 38.36 states that

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

4

TEX. CODE CRIM. PROC. ANN. Art. 38.36(a) (West 2018). Article 38.36 evidence must also meet the requirements of the rules of evidence. *See* ***Garcia v. State***, 201 S.W.3d 695, 702-703 (Tex. Crim. App. 2006). Thus, evidence admitted pursuant to Article 38.36 is still subject to the requirements of Rules 404(b) and 403. When the relationship between the victim and accused is a material issue, illustrating the nature of the relationship may be the purpose for which evidence of prior bad acts will be admissible under Rule 404(b). *See* ***id.*** at 703.

In support of his argument that Blake's testimony was not relevant for any purpose other than character conformity, Appellant emphasizes that Blake's testimony was not corroborated by any other witnesses or extrinsic evidence. This argument is more appropriately addressed in the Rule 403 analysis; further, there is no requirement that a non-accomplice witness's testimony about an extraneous act be corroborated, only that it must be proven beyond a reasonable doubt. (no corroboration required for extrajudicial admission to extraneous offense offered during punishment). *See* ***Padron v. State***, 988 S.W.2d 344, 346 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Appellant also argues that the evidence was not relevant because it did not show a "ramping up of violence to anything close to murder." We disagree.

In this case, the indictment alleged that Appellant intentionally and knowingly caused Alicia's death by shooting her with a firearm. Throughout trial, Appellant urged the theory that the shooting was an accident. Thus, Appellant's intent, i.e. whether it was his conscious objective or desire to cause Alicia's death, was a material issue at trial. Therefore, evidence that Appellant mentally, physically, and sexually abused Alicia reflects an ongoing course of violent conduct toward Alicia and tends to make it more probable that it was his conscious objective or desire to cause Alicia's death. *See* ***Williams v. State***, 927 S.W.2d 752, 758 (Tex. App.—El Paso 1996, pet. ref'd). Further, this same evidence sheds light on the previous relationship between Appellant and Alicia and tends to rebut Appellant's defense that he shot Alicia accidentally. *See* ***id***. Thus, the trial court did not abuse its discretion by finding that Blake's testimony was relevant to material issues other than Appellant's character.

While the evidence is relevant under Article 38.36 and Rule 404(b), the trial court may abuse its discretion if the probative value of the evidence is outweighed by its prejudicial effect. Appellant argues that Blake's testimony was unduly prejudicial and should have been excluded. In undertaking a Rule 403 analysis, a trial court must balance

(1) the inherent probative force of the proffered item of evidence along with

(2) the proponent's need for that evidence against

(3) any tendency of the evidence to suggest decision on an improper basis,

(4) any tendency of the evidence to confuse or distract the jury from the main issues,

(5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and

(6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

The trial court could have reasonably concluded that the probative value of Blake's testimony was considerable. As previously discussed, Blake's testimony regarding Appellant's abuse of Alicia made it significantly more probable that he acted intentionally when he shot and killed Alicia. *See Williams*, 927 S.W.2d at 758. Further, the trial court could have reasonably concluded that the State needed to present such evidence, as Appellant's claim that he shot Alicia by accident directly controverts an element of the indictment. *See id.* at 759. The State sought to refute Appellant's theory by proving that Appellant engaged in a pattern of abuse that culminated in Alicia's murder. Without evidence of Appellant's prior conduct towards Alicia, the State would have been unable to effectively challenge Appellant's assertion that the shooting was an accident. While Blake's testimony certainly resulted in some prejudicial effect, it did not result in unfair prejudice to Appellant.

Appellant argues that the sexual nature of the testimony, in particular, was unduly prejudicial. We disagree. We note that the jury previously heard audio tapes of Appellant telling officers that he and Alicia engaged in "three way" sexual acts with other individuals; thus, the non-monogamous sexual nature of their relationship was before the jury at the time Blake testified. Further, Blake's testimony regarding the sexual nature of Appellant and Alicia's relationship was framed in the context of abuse. Blake characterized their sexual relationship as a facet of Appellant's abuse; consequently, it was probative of Appellant's intent on the evening of the murder, given that Appellant and Alicia were planning to engage in sexual relations with a third person before the murder. Appellant also complains that Blake's testimony was uncorroborated. However, as previously stated, corroboration is not required, and the jury was instructed to consider evidence of extraneous acts only if it believed, beyond a reasonable doubt, that they

occurred. *See **Padron***, 988 S.W.2d at 346. Under the circumstances of this case, we conclude that the probative value of Blake's testimony was not outweighed by its prejudicial effect. *See **Giglioblanco***, 210 S.W.3d at 642-43. Thus, the trial court did not abuse its discretion in admitting Blake's testimony.

**Admissibility of Watson's Testimony**

Watson testified that she dated Appellant fifteen years prior to Alicia's murder, when both she and Appellant were fifteen years old. She characterized their relationship as unhealthy, and described Appellant as controlling. Further, she testified about an incident wherein Appellant shot her in both knees with a pellet gun at close range. She testified that the projectiles from the pellet gun penetrated her jeans and broke her skin, causing a laceration so severe that she probably should have sought medical attention. Watson testified that she did not place much significance on the event at the time, because she and Appellant had been "playing around." Watson testified that she continued her relationship with Appellant after the incident, until he eventually ended the relationship to be with Alicia. Watson testified that as an adult, she viewed the incident as unacceptable.

Appellant argues that Watson's testimony regarding the shooting is not relevant for any purpose but to show conformity with bad character and that it has no probative value and is unduly prejudicial. The State argues that Watson's testimony was admissible to rebut Appellant's defense of accident or mistake.

We fail to see how the incident described by Watson rebuts Appellant's defense of accident. The incident described by Watson bears little resemblance to the charged offense. *See **Sandoval v. State***, 409 S.W.3d 259, 300 (Tex. App.—Austin 2013, no pet.); *see also **De La Paz***, 279 S.W.3d at 347. The incident occurred fifteen years before Alicia's murder, when Appellant was in high school. Further, it involved Appellant shooting Watson in the knee with a pellet gun during what she described as "playing around" between two teenagers. Simply put, this evidence is not probative as to whether Appellant intentionally or knowingly shot his wife in the head with a pistol.

Thus, we conclude that the trial court abused its discretion in finding Watson's testimony admissible under Rule 404(b) for the purposes of showing Appellant's intent to kill Alicia or rebutting Appellant's accident defense. *See **Sandoval***, 409 S.W.3d at 300. Because we so conclude, we need not address Appellant's Rule 403 argument. *See* Tex. R. App. P. 47.1.

7

**Harm Analysis**

Having concluded that the trial court abused its discretion in allowing Watson's testimony regarding the pellet gun incident, we now must determine if the error was harmful and reversible. The State argues that any error in the admission of Watson's testimony was harmless. After examining the record in its entirety, we agree with the State, as we cannot say that the trial court's erroneous admission of Watson's testimony warrants reversal.

The evidence supporting Appellant's guilt was substantial. While Appellant claimed the shooting was accidental, the evidence at trial strongly suggested otherwise. The medical examiner testified that Alicia was shot in the left side of the forehead and had numerous bruises on her body that were inflicted ante mortem. The lead investigator testified that Appellant's explanation that he accidentally shot Alicia was not credible. He elaborated that Appellant was clearly familiar with guns, and his claim that the gun was unloaded when he pulled the trigger prior to shooting Alicia was not believable because the gun still contained five live rounds after the shooting. Further, text messages between Appellant and Alicia in the days leading up to the shooting showed they were engaged in an argument. Alicia's family members testified that Appellant isolated her from others, and that she previously tried to leave him. And again, Blake testified regarding the extensive abuse he witnessed Appellant perpetrate on Alicia. In contrast, Watson testified that the pellet gun incident was fifteen years ago and unremarkable to her when it occurred.

Given the evidence the jury heard supporting Appellant's guilt, Watson's testimony is practically inconsequential. Thus, based on our review of the record as a whole, we have fair assurance that the trial court's error in admitting her testimony did not influence the jury, or had but slight effect. *See Motilla*, 78 S.W.3d at 355-56. Because the admission of Watson's testimony did not violate Appellant's substantial rights, we overrule his sole issue.

### CONCLUSION

Having *overruled* Appellant's sole issue, we *affirm* the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered January 16, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY, 2019**

**NO. 12-18-00080-CR**

**DANIEL JOSEPH SCOTT,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 173rd District Court

of Henderson County, Texas (Tr.Ct.No. CR17-0053-173)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*