PD-1001-17
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/9/2017 4:06 PM
Accepted 10/10/2017 12:28 PM
DEANA WILLIAMSON
CLERK

**NO. PD-1001-17**

**IN THE**
**COURT OF CRIMINAL APPEALS**
**OF TEXAS**
**AT AUSTIN**

FILED
COURT OF CRIMINAL APPEALS
10/10/2017
DEANA WILLIAMSON, CLERK

**CHRISTIAN ANDRES OJEDA,**
**Appellant**

**v.**

**THE STATE OF TEXAS,**
**Appellee**

*On appeal in Cause No. F14-76216*
*from Criminal District Court No. 3*
*Of Dallas County, Texas*
*And on Petition for Discretionary Review from*
*the Eighth District of Texas at El Paso*
*In Cause No. 08-15-00305-CR*

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

*Counsel of Record:*

| | |
|---|---|
| **Lynn Richardson** | **Nanette Hendrickson** |
| **Chief Public Defender** | **Assistant Public Defender** |
| | Dallas County Public Defender's Office |
| **Michael Casillas** | State Bar Number: 24081423 |
| **Chief, Appellate Division** | 133 N. Riverfront Blvd., LB 2 |
| | Dallas, Texas 75207-399 |
| | (214) 653-3550 (*telephone*) |
| | (214) 653-3539 (*fax*) |

ATTORNEYS FOR PETITIONER/APPELLANT

# LIST OF PARTIES

**APPELLANT**
Christian Andres Ojeda

**APPELLEE**
The State of Texas

**TRIAL COURT JUDGE**
Judge Gracie Lewis
Criminal District Court Number Three
133 North Riverfront Boulevard
Dallas, Texas 75207

**DEFENSE COUNSEL AT TRIAL**
Robbie McClung and Richard Franklin
100 Highland Park Village, Suite 200
Dallas, Texas 75205

**STATE'S ATTORNEY AT TRIAL**
Terrance Downs and Elaine Evans
Dallas County District Attorney's Office
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

**APPELLANT'S ATTORNEY ON APPEAL**
Katherine A. Drew
Dallas County Public Defender's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, Texas 75207-4399

**STATE'S ATTORNEY ON APPEAL**
Faith Johnson (or her designated representative)
Dallas County District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

# TABLE OF CONTENTS

LIST OF PARTIES..................................................................................................... ii

INDEX OF AUTHORITIES .....................................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ..................................................1

STATEMENT OF THE CASE ...................................................................................1

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE ....................2

STATEMENT OF FACTS ..........................................................................................2

GROUNDS FOR REVIEW........................................................................................2

      ARGUMENT........................................................................................................2

GROUND FOR REVIEW 1, RESTATED ...............................................................2

Whether the Court of Appeal's misapplied the rule in Resendez
v. State and Zillender v. State.

GROUND FOR REVIEW 2, RESTATED ...............................................................7

Whether the Court of Appeals misapplied the harmless error
analysis in Whitaker v. State.

CONCLUSION...........................................................................................................11

PRAYER FOR RELIEF ............................................................................................11

CERTIFICATE OF SERVICE ..................................................................................12

CERTIFICATE OF COMPLIANCE.........................................................................12

# INDEX OF AUTHORITIES

**Cases**

*Ojeda v. State*,
   No. 08-15-00305-CR, 2017 WL 3405313 (Tex. App.—Dallas August 9,
   2017) ....................................................................................................... 2, 3, 6, 7

*Resendez v. State*,
   306 S.W.3d 308 (Tex. Crim. App. 2009) ................................................. 6, 7

*Whitaker v. State*,
   286 S.W.3d 355 (Tex. Crim. App. 2009) ............................................... 7, 11

*Zillender v. State*,
   557 S.W.2d 515 (Tex. Crim. App. 1977) ..................................................... 7

**Rules**

TEX. R. APP. P. 33.1(a)(1)(A) .......................................................................... 7

TEX. R. APP. P. 68.4(i) ...................................................................................... 2

TEX. R. EVID. 103(a)(2) ................................................................................... 7

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

Christian Ojeda, Appellant, respectfully presents to this Honorable Court his Petition for Discretionary Review of the Eighth District Court of Appeals' Opinion affirming the trial court's judgment.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument because this case presents a question of law on issues having statewide impact and possible reoccurrence. Oral argument may be helpful to the members of this Court in the resolution of the issues presented.

## STATEMENT OF THE CASE

Appellant was charged by indictment with murder in violation of TEX. PENAL CODE § 19.02. (CR1: 13). Appellant entered a plea of not guilty to this indictment and was afforded a trial before a jury. (RR5: 40; RR6: 15). At the close of the evidence, the jury found Appellant guilty of manslaughter, a lesser included offense. (CR1: 539; RR9: 7). The jury subsequently found an enhancement paragraph to be true and assessed punishment at life imprisonment and a $10,000.00 fine.[1] (CR1: 545; RR9: 86). Judgment was entered on September 4, 2015. (CR1: 546). Appellant subsequently gave notice of appeal. (CR1: 550).

---

[1] Appellant entered a plea of true to the enhancement allegation. (RR9: 9).

1

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

On August 9, 2017, in an unpublished opinion authored by Justice McClure, the Court of Appeals for the Eighth District of Texas affirmed the trial court's judgment. *Ojeda v. State*, No. 08-15-00305-CR, 2017 WL 3405313, *7 (Tex. App.—Dallas August 9, 2017). This Court granted an extension of time to file a Petition for Discretionary Review, which is timely if filed on or before October 9, 2017.

## STATEMENT OF FACTS

The facts of this case, which are extensive, are adequately recited in the Court of Appeals' opinion, which is attached to this Petition as required by Tex. R. App. P. 68.4(i).

Suffice it to say that Appellant was charged with and convicted of manslaughter. (CR: 546).

## GROUNDS FOR REVIEW

**Ground One: Whether the Court of Appeal's misapplied the rule in *Resendez v. State* and *Zillender v. State*.**

**Ground Two: Whether the Court of Appeals misapplied the harmless error analysis in *Whitaker v. State*.**

## ARGUMENT

## GROUND FOR REVIEW 1, RESTATED

**Whether the Court of Appeal's misapplied the rule in *Resendez v. State* and *Zillender v. State*.**

2

In its opinion, the Courts of Appeals ruled that trial counsel's objection to the admission of State's Exhibit 86, the video taped interview of Appellant by police, did not preserve error. *Ojeda*, 2017 WL 3405313, at *4–6. The Court of Appeals reasoned that the objection was not specific enough to inform the trial court or counsel of what part of the tape was objectionable. *Id*. at *5. However, the facts during the trial showed the trial did in fact understand the objection and as a result, should have preserved error. Therefore, the Court of Appeals' ruling is contrary to the holdings of this Court.

The record reflects that defense counsel made objections to the admission of State's Exhibit 86, the taped interview of Appellant by police, prior to trial and prior to the tape being offered into evidence. Over a lunch hour break in the trial, defense counsel stated that she had received a redacted copy of the video tape from the State. (RR7: 115). However, that copy was not effective and so the defense was forced to view the State's original copy. (RR7: 115). The defense had tendered the tape back to the State and explained that there were still redactions that needed to be made because there "are still a great deal of prejudicial information in there that is extraneous to this offense that needs to be redacted out." (RR7: 115-116).

3

Defense counsel stated that "further redactions" were requested, but that she had not yet been able to listen to the tape. (RR7: 164). It was represented to the court that the original tape was 57 minutes, but had been reduced to 35 minutes, presumably because of the redactions that the State made to the tape. (RR7: 164).

The record reflects that, while some agreement had been reached on deletions to the tape, there were "more things that we said needed to be deleted." (RR7: 166-167). The defense also objected to "manually deleting them as opposed to having previously deleted them." (RR7: 167). Defense counsel clarified her objection to the trial court as follows:

> MS. McCLUNG: Well, Judge, what's not fair is I'm given times of what they are saying I – they believe our problems are. I can't go and review all those times because I have to borrow the full set and find all those times. So, yes, I'm agreeing with the things they've marked that they want to delete. Yes, I want them deleted, and I don't like doing it manually.
>
> Am I saying that encompasses everything that's prejudicial? That's hard in this case, because there's too much back and forth with prejudicial and nonprejudicial.

(RR7: 167-168). Defense counsel informed the trial court that, prior to that day, she had not had an opportunity to tell the State what she wanted deleted. (RR7: 168). Indeed, defense counsel did not even know whether the State planned to use the interview in evidence. (RR7: 168). Defense counsel continued as follows:

4

MS. McCLUNG: Just that we believe that by manually changing the audio on it has too much human error and leaves too much room because this thing is so replete with prejudiced material that it's – it's too much human error, that something prejudicial will end up being put in front of the jury that shouldn't.

(RR7: 169). The trial court overruled this objection. (RR7: 169).

When the State actually offered the tape into evidence and received permission to publish the tape for jury, defense counsel further objected: "Judge, we'd just ask the Court to note our objections to this as well as pretrial motions that are in place." (RR7: 204). The trial court noted the objection and gave the defense a "running objection" to the tape. (RR7: 204-205).

The State and the defense eventually agreed "to all times that should be redacted."[2] (RR8: 5). The tape was published to the jury.[3] (RR8: 6).

The Court of Appeals' decision is in conflict with the holding of this Court. The Court of Appeals cited this Court's reasoning in *Resendez v. State* stating that "'The purpose of requiring a specific objection in the trial

---

[2] An unredacted original of the tape was offered for record purposes at the guilt/innocence phase of the trial as State's Exhibit 106. (RR8: 5-6). The unredacted tape was played for the jury, over defense counsel's objections, at the punishment phase of the trial. (RR9: 9).

[3] Technical issues were experienced when the State tried to play the tape for the jury. (RR7: 205-206). The jury was excused for the evening and, apparently, the issues were resolved overnight. (RR7: 205, RR8: 5-6). Had these issues not been resolved, it is clear that the trial court would not have permitted the State to introduce the tape into evidence. (RR7: 205-206).

court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint."' *Ojeda*, 2017 WL 3405313, at \*4, *quoting Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). However, the Court of Appeals then ignored the fact that the trial court did rule on the objection and appeared to understand the nature of it.  In the case at bar, defense counsel asked the trial court to "note our objections to this as well as pretrial motions that are in place." (RR7: 204). The record contains an omnibus pre-trial motion seeking a hearing before any statements made by Appellant were introduced as well as extraneous offenses, (CR1: 507), but no specific pre-trial hearing was held on the admissibility of the tape. However, there was a pre-trial hearing on the Defense's motion in limine regarding extraneous offenses. (RR4: 4-5; see also CR1: 525-526). There were also multiple discussions on the record addressing counsel's concerns about the extraneous offense evidence on the tape and requesting redactions.[4] (RR7: 115-116, 164-167).

The trial court clearly understood the defense objections because the defense was granted a "running objection" when the tape was published to

---

[4] There were also discussions off the record in and around the time that Detective David testified. (RR7: 97, 107, 110, 114, 163, 169, 170, 205). While the substance of these off the record discussions is not apparent in the record, it is reasonable to assume that the admissibility of the tape may have been discussed during one or more of these discussions.

the jury. (RR7: 204-205). If the substance and/or specific grounds for the objection are apparent from the context, and as long as the correct ground for the objection or request was obvious to the judge and opposing counsel, error is considered preserved. *See Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977); *see also* TEX. R. APP. P. 33.1(a)(1)(A); TEX. R. EVID. 103(a)(2). All parties to this proceeding were fully aware of the nature of defense counsel's objections. Hence, the error was preserved for appellate review and the Court of Appeals' decision was contrary to the rulings in both *Resendez* and *Zillender*. *Resendez*, 306 S.W.3d at 312; *Zillender*, 557 S.W.2d at 517.

## GROUND FOR REVIEW 2, RESTATED

**Whether the Court of Appeals misapplied the harmless error analysis in *Whitaker v. State***

The Court of Appeals also determined that even if the error by the trial court admitting State's Exhibit 86 was preserved, it was harmless error to do so. The Court cited *Whitaker v. State* in reasoning that Appellant would have been convicted whether the tape was admitted or not. *Ojeda*, 2017 WL 3405313, at *5, *citing Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009). This argument, however, would ignore the fact that the State's evidence against Appellant was thin and entirely circumstantial.

7

Indeed, after the tape of Appellant's interview with Detective David was played for the jury, David testified that he had enough evidence to charge Appellant with murder prior to the interview. (RR8: 7). According to David, he had the following evidence:

> A. We had -- physical evidence we had was the fingerprints on the bag. We had blood at the house where he was living. We had an eyewitness that confirmed the fact that he had a knife *and that she saw him stab Manuel.*
>
> Q. And that witness was who?
>
> A. Rachel Fairbanks.

(RR8: 7) (emphasis added). David, however, mis-spoke on one crucial point: *Rachel never testified that she saw Appellant stab Manny*. To the contrary, Rachel's testimony in this regard is as follows:

> A. Christian turned around and grabbed a knife.
>
> Q. You saw Christian grab a knife.
>
> A. Yes.
>
> Q. Were you close enough to tell what type of knife it was?
>
> A. No.
>
> Q. So when the defendant grabbed the knife, what did he do with it?
>
> A. After that, *I didn't see what he did with it.* Monica started screaming that he has a knife and everything happened so fast after that…

8

Q. So you see the defendant holding a knife in his hand, right?

A. Uh-huh.

Q. And you hear another person yell out he had a knife.

A. Uh-huh.

Q. Now, after you saw the defendant with the knife, did you see him continue to engage Manny?

A. Yes.

Q. And where was Brandon at the time?

A. Brandon was standing right there in the way of Manny, I guess trying to stop him from stabbing Manny, and *Brandon ended up getting stabbed in his hand*.

Q. So at some point you saw Brandon standing between Manny and the defendant?

A. Yes.

Q. And at some point you know for a fact that Brandon was stabbed.

A. Oh, yeah.

Q. After Brandon was stabbed, what happened?

A. Adam grabbed Brandon and we got -- they got in the car and we took off…
*
Q. Okay. Now, from the time that you saw the defendant holding that knife, how much -- how much longer after that was it that Manny went to the ground?

A. I don't remember.

9

Q. Was it a matter of seconds or a matter of minutes?

A. I mean, I'd say sec --

Q. Seconds.

A. Seconds, yeah.

Q. And as far as you could see, did anybody else out there have a knife other than the defendant?

A. No.

Q. Did you see Manny with a knife?

A. No.

Q. Did you see Adam Waller with a knife?

A. No.

Q. Did you see Brandon Blair with a knife?

A. No.

Q. The only person you saw with a knife was this defendant.

A. Yes.

(RR6: 116-119) (emphasis added).

It is readily apparent that Rachel did not testify that she saw Appellant stab Manny. Hence, David's testimony that he had an eyewitness that saw Appellant stab Manny is erroneous under this record. The only direct evidence that Appellant stabbed Manny comes from his police interview.

10

Without this interview, the State had no direct evidence that Appellant stabbed Manny. Rather, the State's case would boil down to the following: (1) Appellant's fingerprints on the trash bags, (2) the presence of blood at the house where he was living at the time, and (3) testimony that Appellant was seen with a knife in his hand in Manny's vicinity. The jury would have had no evidence at guilt/innocence that Appellant had stabbed Manny at all, other than David's erroneous testimony regarding what Rachel saw. Appellant's entire defense at trial was that he was not guilty at all, a theory certainly undermined by the contents of State's Exhibit 86. Even though the jury convicted Appellant of the lesser included offense of manslaughter, Appellant was still convicted of a homicide. The harm from the admission of this evidence is clearly established. Reversal is required. Since the Court of Appeals failed to apply the standard in *Whitaker v. State* correctly, their decision is contrary to the rulings of this Court. *Id*. at 369.

**CONCLUSION**

The Court of Appeals' decision to affirm the trial court's ruling in Appellant's case is contradictory to the rulings of this Court. This Court should grant discretionary review to resolve this discrepancy between the Court of Appeals' ruling and the ruling of this Court.

**<u>PRAYER FOR RELIEF</u>**

11

For the reasons herein alleged, Appellant prays this Court grant this petition and, upon reviewing the judgment entered below, reverse Appellant's conviction and grant him a new trial.

Respectfully submitted,

Lynn Richardson
Chief Public Defender

/s/ *Nanette Hendrickson*
Nanette Hendrickson
Assistant Public Defender
State Bar No. 24081423

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of October, 2017, a true copy of the foregoing petition for discretionary review was served on Lori Ordiway, Assistant District Attorney, Dallas County Criminal District Attorney's Office, 133 N. Riverfront Blvd., LB-19, 10th Floor, Dallas, Texas, 75207, by electronic delivery; and was also served on, Stacy M. Soule, State Prosecuting Attorney, P.O. Box 13046, Austin, Texas, 78711 by electronic delivery at information@spa.texas.gov.

/s/ *Nanette Hendrickson*
Nanette Hendrickson

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Petition for Discretionary Review contains 2,765 words.

/s/ *Nanette Hendrickson*
Nanette Hendrickson

# APPENDIX

2017 WL 3405313
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

**(Do Not Publish)**
Court of Appeals of Texas,
El Paso.

Christian Andres OJEDA, Appellant,

v.

The STATE of Texas, Appellee.

No.

08
–
15
–
00305
–
CR
|
August 9, 2017

Appeal from Criminal District Court No. 3 of Dallas County, Texas (TC # F–1476216–J)

**Attorneys and Law Firms**

Susan Hawk, for The State of Texas.

Nanette Hendrickson, for Christian Andres Ojeda.

Before McClure, C.J., Rodriguez, and Hughes, JJ.

## OPINION

ANN CRAWFORD McCLURE, Chief Justice

**\*1** A jury convicted Christian Andres Ojeda of manslaughter. After pleading true to an enhancement paragraph, the jury assessed a life sentence and the maximum possible fine of $10,000.00. On appeal, Appellant raises four challenges to evidentiary rulings in the guilt-innocence phase of the trial. One focuses on a recorded interview of Appellant that alludes to other bad acts. Three issues relate to the exclusion of a hearsay

statement. We reform the judgment and affirm it as reformed.

## FACTUAL SUMMARY

Appellant was indicted for the murder of Manuel Rios by stabbing him with a knife. Rios's body was found dumped under a freeway overpass. An autopsy revealed that he died from a single stab wound to the chest. The investigation quickly led back to Appellant. The State tied the murder to Appellant through the testimony of several witnesses to the crime together with forensic evidence found near the body and at the murder scene. The State also relied on Appellant's videotaped interview.

On the morning of August 18, 2014, Rios [1] was with a group of people at a Dallas area apartment. [2] Rachel Fairbanks and her fiancé, Adam Waller, were among the group. Rios apparently approached Rachel, making her feel uncomfortable. Adam told Rios to leave, and he did. Adam and Rachel, along with Monica Martinez and Brandon Blair, later left in Rachel's car to run errands. Rachel testified that while en route, Adam received a text message from Appellant. Adam then changed directions, and headed to a house at 11302 Castolon. Rios and Appellant were standing outside the residence. Adam exited the car to "have words" with Rios for disrespecting Rachel. Rachel testified that Adam approached Rios and immediately struck him one time. Adam, who is considerably larger than Rios, then had words with Rios but they ended the conversation by shaking hands. Brandon, who had also emerged from the car, then began arguing and fighting with Rios. Appellant joined in to help Brandon.

According to Rachel, who viewed the fight from the car, Appellant grabbed a knife about a minute into the fight. Brandon moved between Appellant and Rios, and was stabbed in the hand. Brandon then returned to the car. Rachel did not see Appellant stab Rios, but as they left, she saw Rios sitting on the ground and no one else had a knife. She described the expression on Appellant's face as if he had the "devil in him that day." Rachel further noted that while driving Brandon to the hospital, Adam received a telephone call from Appellant. Adam's demeanor instantly changed, "[l]ike, his—like, his heart just dropped to his stomach. I mean, it was just sad."

The State also proffered the testimony of Kevin Martinez who resided at the Castolon address. He was in a back bedroom with his girlfriend, Kimberly Streetman, at the time of the stabbing. He heard a bang on the front door, and when he opened it, Rios fell in front of him. He was struggling to breathe. Kevin saw another person outside but he quickly left. There was a "butterfly" knife in Appellant's hand. Appellant gave the knife to Kevin and told him to get rid of it, but Kevin gave it back. He and Appellant carried Rios, whom Kevin believed had died, through the house to the backyard and covered the body with a blanket. Sometime later, they put the body in two trash sacks, one covering the torso, and the other covering the feet. Kevin then proceeded to drink half a bottle of whiskey. After sunset, Kevin went with Appellant and his girlfriend to dump the body, which had already been loaded into trunk of a car. Kevin recalled only that the car stopped on a freeway, the trunk was opened, and the body removed. [3]

**\*2** The police obtained fingerprints on the trash bags used to cover the body. Several of the lifted prints matched Appellant and Kevin. The police found bloodstains on the front porch and inside the Castolon house. Blood was also on the railing of the overpass where the body had been dumped. The police found additional blood inside the trunk of the car. Using DNA from these samples, the State compared it to samples from the decedent, Adam, and Brandon. The State did not have a DNA sample from Appellant. The decedent's DNA matched all of the sources, and Brandon's DNA matched two stains on the fabric from the trunk, and seven from the front door area. Adam's DNA matched one stain from the trunk liner. An unknown male's DNA matched samples found on the spare tire, the trunk fabric, the trunk liner, and one from the front door area.

The State concluded its case by playing a police interview of Appellant, identified as State's Exhibit 86. As we describe in more detail below, this videotaped interview was edited to exclude certain questions and answers. A homicide detective conducted the interview eight days after the stabbing. Appellant waived his right to counsel and right to remain silent. He first claimed that he had last seen Rios about two weeks earlier when they got high with another person at a trailer park. His mother told him of Rios's murder, as he knew nothing about it. As the detective began to confront Appellant with facts already developed through the investigation,

Appellant then claimed that he was present when some "white cats" came to the Castolon address, beat Rios, and then took him away. He added that both he and Rios got into trouble with the Texas Syndicate. [4] The detective then confronted Appellant with the fact that his fingerprints were on the trash bags found with Rios's body. Appellant first claimed the fingerprints were not his, but then claimed that unidentified members of the Aryan Brotherhood (identified by their distinct tattoos) came to the Castolon address and asked him for trash bags. When next confronted with the blood in the back of the car, Appellant asked to stop the interview so he could talk with his girlfriend and mother. When the detective pressed him to tell the truth, he then claimed members of another gang who had no identifying tattoos beat Rios, and threatened everyone with guns. Appellant finally broke down, saying "I did not mean to" and that "it was an accident." He picked up the knife that Rios had dropped and somehow stabbed him. Even with this last version of events, he claimed no one else was home at the time, and he disposed of the body himself.

Appellant called Kimberly Streetman to testify in his case-in-chief. She and Kevin were at the house that day. Around noon, she heard a "ruckus" outside and peered through a window to see Adam screaming at Rios. Adam's face was bright red and Rios appeared scared. Brandon was standing behind Adam. She went back to her room. As she did so, she heard Adam slamming the front door, and saying, "No, you are not going inside." Kevin went to the front of the house to see what was happening.

The jury was charged on murder, but found Appellant guilty of the lesser-included offense of manslaughter. The indictment contained one enhancement paragraph alleging that Appellant was previously convicted of possession of a controlled substance in 2013. He pled true to the enhancement paragraph. In the punishment phase, the State introduced the unedited version of Exhibit 86 that also included an additional discussion of a related aggravated kidnapping. The evening before Rios was stabbed, another person named Derek Abbott was abducted, driven to the Castolon address, and beaten. In the unedited interview, Appellant admitted that he "whooped [Derek's] ass" and "beat the f\* \*k out" of him. Derek testified that several men, including Appellant, zip-tied his hands and feet, and threw him into the cab of a truck. He was taken to the backyard of the Castolon address, pistol whipped, and then beaten. He could not

leave until a friend paid money in exchange for his release. The State also charged Adam and Brandon with that aggravated kidnapping. Derek identified Appellant as member of the Juggalos, an organized street gang. [5]

## ISSUES ON APPEAL

**\*3** Appellant brings four issues for review. He first contends that the trial court erred in admitting the redacted version of the interview. While several segments of the interview were deleted by agreement of the parties, he complains that it still included other inadmissible "bad acts." In three additional issues, he challenges the exclusion of Adam's statements as overheard by Kimberly Streetman. He contends three exceptions to the hearsay rule permit the statements. The State responds that any error was waived, and in any event, was not harmful.

## ADMISSION OF THE REDACTED INTERVIEW

During trial, the State tendered to defense counsel a DVD containing a redacted version of Appellant's recorded interview. The State deleted seven segments from the original interview that referenced either Appellant's past criminal record, or his involvement with a gang. After defense counsel reviewed the edited interview, she informed the trial court that additional deletions were required. The trial court was not informed of any specific objections, but only that "a great deal of prejudicial information" extraneous to the charged offense "needs to be redacted out."

The trial court allotted some time for counsel to resolve the additional redactions. The State then identified thirteen additional redactions wherein Appellant discussed the aggravated kidnapping, taking drugs, committing food stamp fraud, and possessing firearms. Rather than actually delete these segments from the exhibit, the State intended to manually mute the DVD as each came up. The State prepared a list of the segments, describing their content, and including the beginning and ending time stamps on the DVD.

The trial court took a break for Appellant's counsel to view the DVD along with the list of redacted segments. Following that, the trial court asked if both sides had agreed to the deletions. Defense counsel responded that

she could not answer that question "yes" or "no", restating her earlier position that additional deletions need to be made. The trial court, attempting to clarify the nature of the dispute, then stated:

THE COURT: Okay. I understand that. I understand that you're saying that there's some additional deletions now that you want.

[APPELLANT'S COUNSEL]: That's correct, Judge.

THE COURT: And I got that. So there are—you-all are in agreement to all these deletions, including the new ones that the Defense want; is that correct?

[STATE'S ATTORNEY]: Yes, Judge.

THE COURT: So then the only issue is that the Defense is objecting to you manually deleting them as opposed to having previously deleted them.

[STATE'S ATTORNEY]: Yes, Judge.

THE COURT: Is that fair?

[APPELLANT'S COUNSEL]: I—yes, Judge.

THE COURT: Well, if it's not, then say it's not.

[APPELLANT'S COUNSEL]: Well, Judge, what's not fair is I'm given times of what they are saying I—they believe our problems are. I can't go and review all those times because I have to borrow the full set and find all those times. So, yes, I'm agreeing with the things they've marked that they want to delete. Yes, I want them deleted, and I don't like doing it manually. Am I saying that encompasses everything that's prejudicial? That's hard in this case, because there's too much back and forth with prejudicial and nonprejudicial.

The trial court then gave counsel an additional opportunity to state her objection, to which she responded:

[APPELLANT'S COUNSEL]: Just that we believe that by manually changing the audio on it has too much human error and leaves too much room because this thing is so replete with prejudiced material that it's—it's too much human error, that something prejudicial will end up being put in front of the jury that shouldn't.

**\*4** THE COURT: Okay. Your objection is overruled.

When State's Exhibit 86 was formally offered before the jury, the defense asked the trial court to "note our objections to this as well as pretrial motions that are in place."

State's Exhibit 86 was played to the jury. Appellant never claimed that the audio was not appropriately muted. Now, on appeal, he contends that the trial court abused its discretion in admitting the exhibit because it contained references to prejudicial extraneous offenses. *See* TEX.R.EVID. 404(b)(1)( "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

The State's first response is that this claim is not preserved. We agree. In general, to preserve a complaint for appellate review, a defendant must make a timely and specific objection to the trial court. TEX.R.APP.P. 33.1(a); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex.Crim.App. 2009). In making the objection, terms of legal art are not required, but a litigant should at least "let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App. 1992). An objection stating one legal basis cannot support a different legal theory on appeal. *See Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex.Crim.App. 2004)(objection based on Fifth Amendment did not preserve state constitutional ground); *Goff v. State*, 931 S.W.2d 537, 551 (Tex.Crim.App. 1996)(variance in charge objection with contention on appeal waived error); *Bell v. State*, 938 S.W.2d 35, 54 (Tex.Crim.App. 1996), *cert. denied,* 522 U.S. 827, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997)(objection at trial regarding illegal arrest did not preserve claim of illegal search and seizure on appeal). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez v. State*, 306 S.W.3d 308, 312 (Tex.Crim.App. 2009).

The specific objection articulated below was that making the thirteen redactions by simply muting the sound created the possibility of human error. While we agree the process was fraught with some risk, Appellant makes no complaint that the State's attorney did not dutifully turn down the volume at the appropriate points in the DVD. [6]

**\*5** Beyond that objection, the trial court was at most told that there might be additional objectionable segments "because there's too much back and forth with prejudicial and nonprejudicial." Appellant never directed the trial court to any specific question or answer that should have been deleted. That omission is important. While Rule 404(b) generally excludes references to other crimes, the rule has exceptions. TEX.R.EVID. 404(b)(2)("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). Without pointing to any particular objectionable segment, the State never had the opportunity to explore any exception, nor did the trial court have a chance to consider if the segment even fell under the rule. "When an exhibit contains both admissible and inadmissible evidence, the objection must specifically refer to the challenged material to apprise the trial court of the exact objection." *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex.Crim.App. 1995)(so holding for videotape, of which only some of portions were objectionable); *see also Whitaker v. State*, 286 S.W.3d 355, 369 (Tex.Crim.App. 2009)(defendant failed to point which portions of audio tape were objectionable); *Brown v. State*, 692 S.W.2d 497, 501 (Tex.Crim.App. 1985)(same for pen packet); *Williams v. State*, 927 S.W.2d 752, 760 (Tex.App.–El Paso 1996, pet ref'd)(same for various court filings, and orders); *Thompson v. State*, 08–99–00144–CR, 2000 WL 1476629, at \*2 (Tex.App.–El Paso Oct. 5, 2000, no pet.)(not designated for publication)(same for nursing notes).

Appellant counters that there were off the record discussions about problematic portions of the DVD. Appellant also relies on a motion in limine and omnibus pretrial motion, both of which sought a hearing before extraneous offense evidence was offered. Finally, Appellant contends the trial court understood the nature of the objection, as evidenced by the court allowing a running objection to the exhibit. These contentions are all non-starters. None of the pretrial motions specifically mentioned the interview or articulated any specific objection to any part of the interview. Nor can we discern from the on-record discussion that any off the record discussion advanced a specific objection to a specific portion of the interview. *Cf. Thomas v.*

*State*, 505 S.W.3d 916, 924 (Tex.Crim.App. 2016)(on-record discussion showed that additional objection had been discussed off-the-record). If anything, the off-the-record discussions appear to have been between counsel and directed towards reaching an agreement on what should be redacted from the DVD. The record does not suggest the trial court participated in those discussions. In addition, the mere granting of a running objection begs the question of what objection was actually lodged. The only specific objection here focused on how the edits were to be presented to the jury, and not what edits needed to be made.

Even were the error preserved, Appellant has not convinced us it affected his substantial rights. *See* TEX.R.APP.P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997)("A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."). In assessing harm, we consider "everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App. 2000). We also consider the jury instructions given by the trial court, the State's theory and any defensive theories, closing arguments, and even voir dire, if material to the Appellant's claim. *Id.*

Appellant's brief references eight specific prejudicial portions of Exhibit 86. Several of those specific portions are on the list of the segments that were muted when the DVD was played to the jury. For instance, Appellant's brief refers to a portion of the interview where he admitted that he beat Derek, but that segment is specifically listed as one that was muted. Several other specific references to Derek's kidnapping are also on the muted list. The other specific segments of which Appellant now complains were not clearly extraneous offenses, or are otherwise not harmful. For instance, in one segment that was played, Appellant denied picking up a knife, claiming that if he wanted to hurt someone, he had a shotgun in the house. Unless the jury knew that Appellant had a prior felony conviction (which they did not in the guilt-innocence phase), there is nothing illegal in having a gun inside one's house.

**\*6** Appellant further complains about references to drug usage that are included on the redacted exhibit. The State's lead detective, however, testified *without objection* that he "found out that [Rios] had also been purchasing drugs or selling drugs for [Appellant]." That un-objected to testimony negates the possible prejudice of any drug references on Exhibit 86. *See Reyes v. State*, 84 S.W.3d 633, 638 (Tex.Crim.App. 2002)("However, a defendant who allows evidence to be introduced from one source without objection forfeits any subsequent complaints about the introduction of the same evidence from another source."). Moreover, the State did not address the drug usage in either its closing, or through any of the other witnesses. And compared to the charged offense and the disposal of the body, any drug use would be a minor consideration to the jury.

Appellant's primary focus is that without *any* of the interview on Exhibit 86 being played, the State's case was thin: there were no eyewitness to the actual stabbing, and only inconclusive physical evidence. But this claim assumes that the entire interview would be excluded based on any remaining extraneous offenses that Appellant might have urged. We think it more likely that had Appellant specifically complained of any additional extraneous offense on the DVD, the trial court would have ruled on that specific reference, or the State would have simply added it to the mute list. *Cf. Whitaker*, 286 S.W.3d at 369 (defendant would have been convicted with or without the portions of the audiotapes urged as objectionable on appeal). We overrule Issue One.

## HEARSAY OBJECTIONS

Appellant's second, third, and forth issues all focus on a hearsay objection that the State lodged during Appellant's direct examination of witness Kimberly Streetman. She was in the house that day and heard the argument outside. She looked through a window and saw Adam arguing with Rios. As Appellant's counsel worked through the sequence of what she specifically heard and saw, this exchange occurred:

Q. Okay. And what does [Adam] say to [Rios]?

A. He's—I couldn't really hear all of it, but when I walked out, I heard, 'This isn't funny. Do you think this was funny?' And I was like—

[STATE'S ATTORNEY]: Objection to hearsay.

THE COURT: Objection sustained.

[APPELLANT'S COUNSEL]: Judge, based on the demeanor of the individual and the direction of what she appears that anger is goes towards [sic] and what those words were meant for, we believe it is an exception to the hearsay rule.

THE COURT: Objection overruled [sic]. [7]

In his brief, Appellant argues that three hearsay exceptions (exited utterance, present sense impression, and then-existing mental, emotional or physical condition) apply. Without addressing those specific hearsay exceptions, there are two foundational problems with the argument. To preserve error regarding the exclusion of evidence, the substance of the evidence must be made known to the court through an offer of proof or otherwise be apparent from the context of the questioning. TEX.R.EVID. 103(a)(2); *Williams v. State*, 937 S.W.2d 479, 489 (Tex.Crim.App. 1996). An offer of proof might include a question-and-answer exchange outside the hearing of the jury, or a concise statement by counsel. *Mays v. State*, 285 S.W.3d 884, 889–90 (Tex.Crim.App. 2009). If made in the form of a statement, the proffer "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible." *Warner v. State*, 969 S.W.2d 1, 2 (Tex.Crim.App. 1998). The offer of proof allows the trial court to reconsider its ruling in light of actual evidence and to enable an appellate court to determine whether the exclusion of evidence was erroneous and harmful. *See Mays*, 285 S.W.3d at 890.

**\*7** Appellant made no offer of proof as to anything the witness would say beyond that already in her answer ("This isn't funny. Do you think this was funny?"). If there were some additional hearsay statement she intended to offer, that claim is not preserved. *See Martinez v. State*, 08–12–00058–CR, 2014 WL 1396705, at *3 (Tex.App.–El Paso Apr. 9, 2014, no pet.)(not designated for publication)(excluded testimony was neither in proffer or apparent from the context of the questioning). As for what she did say, the State never asked for an instruction

to disregard the answer. Even if it had, this singular statement adds little to what the jury already knew. The jury had already heard testimony that Adam was mad at Rios for disrespecting Rachel. The jury heard that Adam approached and first struck Manual, knocking him to the ground. Kimberly later testified without objection that Adam slammed the front door closed and told Rios that he could not go inside. She described Adam as the aggressor, his face was "bright red," and a vein on the side of his head was popping out. We are not convinced that the additional hearsay comment affected Appellant's substantial rights. *See Wilford v. State*, 739 S.W.2d 854, 865 (Tex.Crim.App. 1987)(noting that subsequently elicited testimony rendered error "harmless"). We overrule Issues Two, Three, and Four.

## STATE'S CROSS POINT

By cross point, the State complains of an inaccuracy in the judgment. The indictment included an enhancement paragraph that alleged a prior conviction for possession of a controlled substance. Appellant pled true to that paragraph. In the punishment phase, the State introduced a pen packet that included two prior felony convictions for possession. The judgment incorrectly states that Appellant pled true to *two* enhancement paragraphs and the jury found them *both* to be true.

We sustain the State's cross point and reform the judgment to reflect that Appellant pled true to the single enhancement count, which the jury found to be true. *See* TEX.R.APP.P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex.App.–Dallas 1991, pet. ref'd)(reforming judgment); *Lewis v. State*, 08–09–00052–CR, 2010 WL 2396823, at *5 (Tex.App.–El Paso June 16, 2010, pet ref'd)(not designated for publication)(same). We reform the judgment to reflect that Appellant pled true to a single enhancement paragraph, and affirm the judgment as reformed.

Hughes, J., not participating

**All Citations**

Not Reported in S.W.3d, 2017 WL 3405313

Footnotes

1       To distinguish between the victim and the witnesses, we refer to Manuel Rios by his surname. The witnesses are referred to by their given names.

2       This case was transferred to us by the Fifth Court of Appeals, and we apply its precedents to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

3       Kevin was indicted for tampering with physical evidence (the corpse). The jury charge also identified him as an accomplice witness.

4       The Texas Syndicate is a gang that operates in and out of the prison system, and trades in drugs, prostitution, extortion, and murder. *See Holguin v. State*, No. B14–87–00602–CR, 1989 WL 501, at *1 (Tex.App.–Houston [14th Dist.] Jan. 5, 1989, no pet.)(not designated for publication).

5       In Appellant's unedited interview, he also admitted to being a member of the "Insane Clown Posse."

6       We would be remiss in not noting the risk of redacting a DVD in this fashion. The court reporter did not transcribe what audio was actually played to the jury, and while there was no disagreement here about what actually was played, there well could have been. *See Basinger v. State*, No. 05–10–00786–CR, 2012 WL 1704322, at *1 (Tex.App.–Dallas May 16, 2012, no pet.)(mem. op.)(not designated for publication)(noting claim that audio was not muted when video was played); *Rimes v. State*, 05–08–01543–CR, 2009 WL 3298181, at *1 (Tex.App.–Dallas Oct. 15, 2009, no pet.)(same). Additionally, the jury asked that this DVD be re-played again during their deliberations. Because of the manual audio editing, the attorneys needed to be present for that replay, and again, the parties ran the risk of human error in turning the volume up or down.

7       The [sic] reference was added by the court reporter. We are unclear, however, if the trial court sustained the objection and overruled the implied request to reconsider the ruling, or if the trial court reversed itself upon hearing Appellant's proffered exception to the hearsay objection. The briefing assumes the situation to be the former.

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.